UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS E. DIAZ,

       Plaintiff,

vs.

CITY OF INKSTER,

       Defendant.
_____/

Civil Action No.
05-CV-70423

HON. BERNARD A. FRIEDMAN

**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION (DKT. NO. 42)**

The current matter comes before the Court on Plaintiff's Motion for Reconsideration, which was filed on August 14, 2006. The motion asks the Court to reconsider its Order denying Defendant's Motion for Summary Judgment, which was issued on August 2, 2006. Plaintiff argues that he established a racial discrimination claim—under 42 U.S.C. § 1981 and Michigan's Elliott-Larsen Civil Rights Act (MCL § 37.2101 *et seq.*)—regarding Defendant's selection of Gregory Gaskin instead of Plaintiff to be Defendant's Deputy Police Chief.

In its previous Order, the Court denied Defendant's Motion for Summary Judgment because genuine issues of material fact existed. In so doing, the Court ruled that Plaintiff had established a racial discrimination claim—based on direct evidence—for Defendant's selection of Marvin Winkler, and non-promotion of Plaintiff, to the position of Police Chief. The Court also ruled that Plaintiff had established a racial discrimination claim—based on indirect evidence—for Defendant's selection of Gregory Hill, and non-promotion of Plaintiff, to the position of Commander. However, the Court found that Plaintiff did not establish a racial discrimination claim for Defendant's selection of Gregory Gaskin, and non-promotion of Plaintiff, to the position of Deputy Police Chief.

Eastern District of Michigan Local Rule 7.1(g)(2), which applies to motions for reconsideration, states that "[n]o response to the motion and no oral argument are permitted unless the court orders otherwise." The Court will not order that oral argument be heard; however, the Court will consider Defendant's Response and Plaintiff's Reply. Further, Local Rule 7.1(g)(3) requires that the "movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case." Having reviewed Plaintiff's motion and the prior pleadings in this case, the Court finds that Plaintiff has not demonstrated that the Court and parties were misled by a "palpable defect" whose correction would have resulted in a "different disposition" of the case.

## I.     ANALYSIS OF PLAINTIFF'S MOTION FOR RECONSIDERATION

In his Motion for Reconsideration, Plaintiff takes issue with the Court's finding that Plaintiff had not stated a prima facie case for racial discrimination regarding Defendant's selection of Gaskin, instead of Plaintiff, to be Defendant's Deputy Police Chief. Plaintiff argues that the Court improperly considered subjective qualifications in determining that Plaintiff had not satisfied the fourth prong of a prima facie case under the McDonnell Douglas/Burdine paradigm.[1] Plaintiff bases his argument on a recent Sixth Circuit case, White v. Columbus Metropolitan Housing Authority, 429 F.3d 232 (6th Cir. 2005). After review, the Court acknowledges that it did improperly consider subjective factors during its fourth-prong analysis; however, in this case, the Court finds such error to be harmless.

---

[1] The McDonnell Douglas/Burdine burden-shifting paradigm consists of three steps. Under step one, plaintiff must establish a prima facie case of racial discrimination. Under step two, defendant must present legitimate, nondiscriminatory reasons for its employment decision. Under step three, plaintiff must show that defendant's legitimate reasons are merely pretext for discrimination.

A plaintiff can establish "a *prima facie* claim of racial discrimination based on a failure to promote" by showing that: "(1) he is a member of a protected class; (2) he applied and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions." Dews v. A.B. Dick Co., 231 F.3d 1016, 1020-21 (6th Cir. 2000) (footnote omitted). For a "reverse discrimination" claim, the Sixth Circuit has held that the fourth prong is satisfied if the plaintiff demonstrates that "the defendant treated differently employees who were similarly situated but were not members of the protected class." Sutherland v. Mich. Dep't of Treasury, 344 F.3d 603, 614 (6th Cir. 2003). The Sixth Circuit has explained that to demonstrate employees are "similarly situated" requires "the plaintiff [to] show that the 'comparables' are similarly-situated *in all respects*." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992). The Sixth Circuit has further explained that "in all respects" means that a plaintiff must show that "all of the *relevant* aspects of his employment situation were 'nearly identical' to those of [the black applicant's] employment situation." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998) (quotations and citation omitted). Thus, if a plaintiff cannot show that he was similarly situated to the selected applicant, then the plaintiff does not satisfy the fourth prong of a prima facie case; and therefore, he fails to establish a racial discrimination claim under the McDonnell Douglas/Burdine paradigm.

In White, the Sixth Circuit instructed that when a court determines whether a plaintiff has met the fourth prong of a prima facie case, the court should only consider the candidates' *objective* qualifications. See White, 429 F.3d at 243 n.6 (stating "that some comparison of qualifications will be made in analyzing the fourth prong, but not the sort of close comparison that might include consideration of the employer's evaluation of subjective traits or other details about why the [hired

3

applicant] was in fact selected over the plaintiff"). The Sixth Circuit explained that *subjective* qualifications instead should be considered at the second step of the McDonnell Douglas/Burdine burden-shifting paradigm, when the court examines an employer's legitimate and nondiscriminatory reasons for its selection of the hired candidate.[2]

---

[2]In so holding, the Sixth Circuit references the following courts' findings that objective factors should be considered at the first step (prima facie case) of the McDonnell Douglas/Burdine analysis, and that subjective factors should be considered at the second step (legitimate, nondiscriminatory justifications) of the analysis:

> Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 769 (11th Cir. 2005) (noting that a plaintiff need only show that she satisfied the employer's objective qualifications to meet her *prima facie* burden, and that any consideration of the employer's subjective criteria is not relevant until the later stages of the McDonnell Douglas framework, because "[a] contrary rule, under which an employer's subjective evaluation could defeat the plaintiff's initial *prima facie* case, cannot be squared with the structure and purpose of the McDonnell Douglas framework);" EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1194 (10th Cir. 2000) ("[S]ubjective qualifications [ ] are more properly considered at the second stage of the McDonnell Douglas analysis and a plaintiff's failure to meet such qualifications cannot be used to defeat the plaintiff's *prima facie* case."); Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d Cir. 1195) (noting that "the question of whether an employee possesses a subjective quality, such as leadership or management skill," is more appropriately considered in the later stages of the McDonnell Douglas inquiry); Lynn v. Regents of Univ. of Cal., 656 F.2d 1337, 1344 (9th Cir. 1981) ("In our view, objective job qualifications are best treated at step one and subjective criteria, along with any supporting evidence, are best treated at the later stages of the process. To do otherwise would in many instances collapse the three step analysis into a single initial step at which all issues would be resolved. This would defeat the purpose underlying the McDonnell Douglas process.").

White, 429 F.3d at 243 n.6

> The Eastern District of Michigan has stated:
>> The White court seems to reconcile [the tendency to conflate proof of the *prima facie* case with proof of the defendant's legitimate, non-discriminatory reason for its action] by limiting the focus of proof at the *prima facie* stage to objective measures, reserving an employer's subjective determinations to the second part (i.e., proof

4

In its previous Order, the Court found that Plaintiff had failed to satisfy the fourth prong of a prima facie case. The Court ruled that Plaintiff and Gaskin were not similarly situated because their employment situations were not similar in all relevant employment aspects. In its analysis, though, the Court identified two subjective distinguishing factors between Gaskin and Plaintiff—the "longtime relationship" between Police Chief Winkler and Gaskin, and the fact that Winkler was "already very comfortable" with Gaskin. (Op. and Order denying Def.'s Mot. for Summ. J., 22.) These subjective factors should have been examined at step two (legitimate, nondiscriminatory justifications) instead of at step one (prima facie case) of the McDonnell Douglas/Burdine paradigm. However, the Court's inclusion of such subjective factors in its prima facie case analysis is harmless error.

Based solely on *objective* qualifications, Plaintiff cannot satisfy the fourth prong of a prima facie case because Plaintiff and Gaskin were not similarly situated.[3] First, Plaintiff has held a variety of positions within the Inkster Police Department, but he had only been employed by the police department for 15 years. On the other hand, Gaskin had worked for the Detroit Police Department for more than twice that amount of time—for 33 years—and he had held several management-level positions. In fact, in his Reply, Plaintiff admits that "Gaskin has more total command experience than Diaz." (Pl.'s Reply, 3.) Second, Plaintiff does not mention any *management-and-operation* experience outside of the police department. On the other hand, Gaskin has overseen a 220-person staff as the director of security at Greektown Casino, and he has served as a business consultant.

---

of a legitimate, non-discriminatory justification) of the analysis.
Alberts v. Motion Indus., Inc., No. 02-10163-BC, 2006 WL 680837, at *5 (E.D. Mich. Mar. 14, 2006).

[3]It should be noted that two "qualified" candidates are not necessarily similarly situated.

Third, although Plaintiff was working toward a bachelor's degree, he had only obtained an associate's degree. On the other hand, Gaskin had a bachelor's degree and a master's degree. Moreover, Gaskin had also passed the certified public accountant's examination. Fourth, Plaintiff had received disciplinary action in the past, whereas there is no mention of such a mark on Gaskin's employment record. Lastly, Plaintiff does not identify any memberships in police-related organizations. On the other hand, Gaskin is a member of the National Organization of Black Law Enforcement Executives, International Association of Chiefs of Police, Michigan Association of Chiefs of Police, Southeastern Michigan Association of Chiefs of Police, and the American Society for Industrial Security. Thus, based on *objective qualifications* alone, the Court finds that Plaintiff and Gaskin were not similarly situated. As such, Plaintiff does not satisfy the fourth prong of a prima facie case for racial discrimination.

However, even if Plaintiff had sufficiently presented a prima facie case, Plaintiff would still fail to establish a racial discrimination claim. Plaintiff does not satisfy step two of the McDonnell Douglas/Burdine paradigm, for Defendant successfully presents legitimate and nondiscriminatory justifications for its business-judgment decision to hire Gaskin. In its Order, the Court explained Defendant's subjective reasons:

> Winkler personally selected Gaskin as Deputy Chief because the two had worked together for a long time at the Detroit Police Department. They therefore had established a good relationship and were comfortable working together. Winkler also stated that he thought Gaskin's accounting background would be extremely helpful to the police department and to the programs he hoped to implement.

(Op. and Order denying Def.'s Mot. for Summ. J., 23 n.13 (quotations and citation omitted).) Thus, even if the Court were to assume that Plaintiff had stated a prima facie case of discrimination for Defendant's selection of Gaskin, Plaintiff would still fail to satisfy the McDonnell Douglas/Burdine paradigm because Defendant provided legitimate, nondiscriminatory reasons for hiring Gaskin.

6

Lastly, Plaintiff re-argues that Defendant's legitimate and nondiscriminatory reasons for hiring Gaskin were pretext. (Pl.'s Mot. for Recons., 4-6.) Eastern District of Michigan Local Rule 7.1(g)(3) states that "the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication." The Court has already considered Plaintiff's arguments and ruled that he "failed to produce sufficient evidence to reasonably suggest that such legitimate reasons were actually pretext for discrimination." (Op. and Order denying Def.'s Mot. for Summ. J., 23 n.13.) Thus, as the Court previously found, Plaintiff does not meet his burden to show pretext under the McDonnell Douglas/Burdine paradigm.

## II.     CONCLUSION

For the reasons stated above, the Court finds that Plaintiff has not demonstrated a "palpable defect by which the court and the parties have been misled" and whose correction would "result in a different disposition of the case." Accordingly,

IT IS ORDERED that Plaintiff's Motion for Reconsideration is denied.

s/Bernard A. Friedman_____
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated: November 6, 2006
         Detroit, Michigan

I hereby certify that a copy of the foregoing document was served this date upon counsel of record electronically and/or via first-class mail.

_____/s/ Patricia Foster Hommel_____
         Patricia Foster Hommel
    Secretary to Chief Judge Friedman