UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS E. DIAZ,

       Plaintiff,

vs.

CITY OF INKSTER,

       Defendant.

_____/

Civil Action No.
05-CV-70423-DT

HON. BERNARD A. FRIEDMAN

**OPINION AND ORDER DENYING**
**DEFENDANT'S "MOTION FOR JNOV/NEW TRIAL/REMITTITUR" (DKT. NO. 69)**

This matter is presently before the Court on Defendant's "Motion for JNOV/New

Trial/Remittitur." The Court has had an opportunity to review Defendant's motion, Plaintiff's

response, and all relevant documents. Pursuant to E.D. Mich. LR 7.1(e)(2), the Court shall

decide the motion without oral argument. The Court will deny Defendant's "Motion for

JNOV/New Trial/Remittitur."

**I.**     **HISTORY OF THE CASE**

This case was removed from Wayne County Circuit Court on February 3, 2005. A trial

was conducted from February 6, 2007, until February 13, 2007. On February 14, 2007, the jury

returned a verdict in favor of Thomas Diaz ("Plaintiff"). The jury found that the City of Inkster

("Defendant") discriminated against Plaintiff because he is not black. In particular, Plaintiff had

alleged that Defendant discriminated against Plaintiff when it did not promote him to the

position of Police Chief in 2003, to the position of Commander in 2004, and to the position of

Deputy Police Chief in 2006. Further, the jury found that Defendant had a policy, practice or

custom of giving preference to blacks in promotion. Lastly, the jury found that Defendant did

not retaliate against Plaintiff because he had filed a lawsuit against Defendant.  The jury awarded damages of $253,997.

In the motion at hand, Defendant moves for a judgment as a matter of law[1] and a new trial because Defendant argues that (1) the jury's verdict is against the weight of the evidence and (2) the jury was not composed of Defendant's peers.  (Def.'s Mot. ¶ 5.)  On the other hand, Plaintiff argues that the Court should not grant a judgment as a matter of law or a new trial because the verdict is reasonable, has a legally sufficient basis, and is supported by ample evidence.  (Pl.'s Br. Supp. Resp., 1-8.)  Furthermore, Plaintiff argues that there was no systematic exclusion of blacks from the jury.  (Id. at 8-9.)  In addition, Defendant moves for a remittitur of the jury's award because Defendant argues that the amount of damages is against the weight of the evidence.  (Def.'s Mot. ¶ 6.)  On the other hand, Plaintiff asserts that there is no basis for a remittitur.  (Pl.'s Br. Supp. Resp., 10-12.)

## II.     DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Federal Rule of Civil Procedure 50(a) states:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> > (A) resolve the issue against the party; and
> > (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

---

[1]Although Defendant uses the term "JNOV" in its motion, the Court construes Defendant's motion to be a motion for judgment as a matter of law.  The Advisory Committee Notes to Rule 50(a) state that "[i]f a motion is denominated a motion for directed verdict or for judgment notwithstanding the verdict [j.n.o.v.], the party's error is merely formal.  Such a motion should be treated as a motion for judgment as a matter of law in accordance with this rule."

The Sixth Circuit has held that when a trial court determines whether a jury had a "sufficient evidentiary basis" for its verdict, the court must adhere to the following instructions:

> [T]he trial court may neither weigh the evidence, pass on the credibility of witnesses nor substitute its judgment for that of the jury. Rather, the evidence must be viewed in the light most favorable to the party against whom the motion is made, drawing from that evidence all reasonable inferences in his favor. If, after thus viewing the evidence, the trial court is of the opinion that it points so strongly in favor of the movant that reasonable minds could not come to a different conclusion, then the motion should be granted.

Ratliff v. Wellington Exempted Village Sch. Bd. of Educ., 820 F.2d 792, 795 (6th Cir. 1987). In other words, a motion for judgment as a matter of law should *not* be granted if "there is sufficient evidence to raise a question of fact for the jury." Id. Therefore, a judgment as a matter of law is only appropriate if "'it is clear that reasonable people could come to but one conclusion from the evidence.'" Wayne v. Village of Sebring, 36 F.3d 517, 525 (6th Cir. 1994) (quoting Lewis v. City of Irvine, 899 F.2d 451, 454-55 (6th Cir. 1990)).

In the case at hand, the jury found that Plaintiff was not promoted because of Defendant's racial discrimination and its policy, practice or custom of giving preference to blacks. In order to show racial discrimination, under 42 U.S.C. § 1981 or Michigan's Elliott-Larsen Civil Rights Act, MCL § 37.2101, *et seq.*, a plaintiff must "establish a prima facie case . . . for racial discrimination by introducing direct evidence of discrimination or by using the *McDonnell-Douglas[/Burdine]* burden-shifting paradigm" (for indirect or circumstantial evidence). Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555, 561 (6th Cir. 2004). Direct evidence of racial discrimination is only that evidence where "a racial motivation is explicitly expressed." Amini v. Oberlin College, 440 F.3d 350, 359 (6th Cir. 2006). As for indirect evidence, the

United States Supreme Court has explained the applicable burden-shifting framework.  The Supreme Court instructs that the plaintiff "must carry the initial burden . . . of establishing a prima facie case of racial discrimination."  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  If the plaintiff establishes a prima facie case, the "burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id.  If the defendant meets its burden, the "plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).  In order to show a policy, practice or custom of racial preference under Section 1983, the Sixth Circuit has ruled that a plaintiff must "(1) identify the municipal policy or custom, (2) connect the policy [or custom] to the municipality, and (3) show that his particular injury was incurred due to execution of that policy [or custom]."  Turner v. City of Taylor, 412 F.3d 629, 639 (6th Cir. 2005) (quoting Alkire v. Irving, 330 F.3d 802, 815 (6th Cir. 2003)).

Here, Defendant argues that the jury's verdict is against the weight of the evidence.  For instance, Defendant cites to witnesses who testified that race was never a factor in Defendant's employment decisions; that there were several legitimate, non-discriminatory reasons for its hiring/promotion decisions; and that Plaintiff was not promoted because of concerns about his insubordination and lack of confidentiality.  Additionally, Defendant argues that Lieutenant Kevin Smith, one of Plaintiff's friends, lacked credibility.  Furthermore, Defendant argues that racial statistics showed that the police department's command staff was comprised of more whites than blacks, and that whites were hired/promoted more often than blacks.  Thus, Defendant argues that there is not sufficient evidence to support the jury's verdict.

On the other hand, Plaintiff argues that, when the evidence is taken in the light most

favorable to Plaintiff, there was sufficient evidence to find that Defendant is liable under the Elliott-Larsen Civil Rights Act, Section 1981, and Section 1983. For instance, former Inkster City Council member Louise Kolberg testified that Inkster's black Mayor and City Council members were pressuring City Manager Robert Gordon in his search for a police chief. Also, Lieutenant Kevin Smith testified that he and Gordon had a conversation about the race of the next police chief; that a pattern of preference favoring blacks existed in Inkster; that white officers received disproportionate disciplinary actions than did black officers for similar mistakes; and that former Police Chief Marvin Winkler wanted an affirmative action policy in order to boost the number of black officers in the police department. Moreover, Police Chief Gregory Gaskin testified that a police department should mirror the community in which it is located. (Inkster has a predominantly black population.) Further, Defendant had to stipulate that Hill had neither enrolled in nor achieved a bachelor's degree from Western Michigan University, even though Hill had testified to the jury that he had received such a degree from that school. Next, Hill testified about the need for a police department to be reflective of the city's population. In addition, there was testimony about Defendant's hiring and promotion of less qualified black candidates to fill positions. Plus, evidence was introduced about the police department's shift rosters, which included racial categories. Lastly, the jury was presented with a memorandum, issued by City Manager Gordon, that listed the candidates for police chief and included a notation of racial identification next to each candidate's name. Thus, Plaintiff argues that there is sufficient evidence for the jury's verdict.

The Court agrees with Plaintiff. When ruling on a motion for judgment as a matter of law, a court only determines whether there is a *sufficient* evidentiary basis for the jury's verdict. As explained in <u>Ratliff</u>, a court does not weigh the evidence, evaluate the credibility of

witnesses, or impose its own judgment in lieu of the jury's verdict. Moreover, a court must take the evidence in the light most favorable to the non-moving party. As such, when the evidence is taken in the most favorable light to Plaintiff, the Court finds that the jury's verdict is supported by legally sufficient evidence. Therefore, the Court will deny Defendant's motion for judgment as a matter of law.

## III.   <u>DEFENDANT'S MOTION FOR A NEW TRIAL</u>

Rule 50 states that, in addition to a party's motion for judgment as a matter of law, the "movant may alternatively request a new trial . . . under Rule 59." FED. R. CIV. P. 50(b). Rule 59(a) states that "[a] new trial may be granted to all or any of the parties and on all or part of the issues [ ] in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." The Sixth Circuit has interpreted this language as requiring that "a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias." <u>Holmes v. City of Massillon</u>, 78 F.3d 1041, 1045-46 (6th Cir. 1996).

Here, Defendant requests a new trial for two reasons. First, Defendant argues that the jury's verdict is against the weight of the evidence. Second, Defendant argues that it did not receive a trial before a jury of its peers. Thus, the Court construes Defendant's motion for a new trial as based on <u>Holmes</u>'s first prong (verdict is against the weight of the evidence) and third prong (unfair trial).

First, Defendant moves for a new trial because it asserts that the jury's verdict is against the weight of the evidence. On the contrary, Plaintiff argues that the jury's verdict is not against

the weight of the evidence.  The Sixth Circuit has held:

> One who challenges the weight of the evidence argues that the jury's verdict, although supported by some evidence, is still clearly against the weight of the evidence.  Unlike motions for directed verdicts and judgments notwithstanding the verdict [judgment as a matter of law], in ruling upon a motion for a new trial based on the ground that the verdict is against the weight of the evidence, the trial court must compare the opposing proofs, weigh the evidence, and set aside the verdict if it is of the opinion that the verdict is against the clear weight of the evidence.  It should deny the motion if the verdict is one which could reasonably have been reached, and the verdict should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable.

J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co., 936 F.2d 1474, 1487 (6th Cir. 1991) (citation omitted).  The Sixth Circuit has further explained that a "trial court should deny such a motion [for a new trial] if the verdict is one that reasonably could be reached, regardless of whether the trial judge might have reached a different conclusion were he the trier of fact."  Wayne, 36 F.3d at 525.  See also Holmes, 78 F.3d at 1047 (stating "this Circuit has determined that a jury's verdict should not be overturned as being against the weight of the evidence unless that verdict was unreasonable").  In addition, the Sixth Circuit has found that "[g]enerally, the grant or denial of a new trial is purely within the discretion of the trial court."  J.C. Wyckoff & Assocs., 936 F.2d at 1487.

After comparing the opposing proofs and weighing the evidence, the Court finds that the jury's verdict is not against the clear weight of the evidence.  Based on the evidence presented at trial, some of which is included in Section II of this Opinion, the jury could reasonably have reached the verdict that it did.  Therefore, the Court will deny Defendant's motion for a new trial because the jury's verdict is not against the clear weight of the evidence.

Second, Defendant moves for a new trial based on its allegation that it did not receive a

fair trial because the jury was not a jury of its peers. Defendant states that the jury venire consisted of only one or two non-white individuals. (Def.'s Br. Supp. Mot., 10.) Defendant further states that the empaneled petit jury consisted of all white individuals. (Id. at 11.) As such, Defendant argues that the jury selection violated Defendant's constitutional right to a jury selected from a representative cross section of the community. (Id. at 11-12.) On the other hand, Plaintiff argues that a new trial should not be granted. Plaintiff states that Defendant has not shown a systematic exclusion of blacks from the jury venire. Moreover, Plaintiff states that the absence of black jurors from the petit jury does not translate to an inherent constitutional violation.

The Court agrees with Plaintiff. The Supreme Court has held that although "petit juries must be drawn from a source fai[r]ly representative of the community," there is "no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." Taylor v. Louisiana, 419 U.S. 522, 538 (1975). In other words, although a party is "not entitled to a jury of any particular composition, . . . the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." Id. (citations omitted).

The Supreme Court has explained that a "prima facie violation of the fair-cross-section requirement" is established if a party shows: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." Duren v. Missouri, 439 U.S. 357, 364 (1979). "Systematic

exclusion" is defined as exclusion that is "inherent in the particular jury-selection process utilized." Id. at 366. For instance, in Duren, the "cause of the underrepresentation was systematic" because the petitioner offered proofs showing "a large discrepancy [between the percentage of women in jury venires and the percentage of women in the community] occurred not just occasionally but in every weekly venire for a period of nearly a year." Id. Therefore, unless a party can demonstrate a systematic exclusion "due to the *system* by which juries were selected[,]" a party will not be able to establish a prima facie violation of its right to a jury drawn from a fair cross section of the community. Id. at 367.

Here, Defendant does not satisfy the third prong of the Duren test. Defendant has offered no proof of a "systematic exclusion" of blacks from the jury-selection process in the Eastern District of Michigan. Defendant only states that "a significant element of the community was excluded from the jury venire," and that "[i]t is remarkable that out of 23 members of the venire, there was not one individual who was clearly African American." (Def.'s Br. Supp. Mot., 11-12.) Defendant does not contend that there is a pattern of "disproportionate and consistent exclusion" of blacks from jury venires. Duren, 439 U.S. at 367. Defendant does not contend that the jury-selection system *itself* is to blame for the absence of black jurors serving on the jury in this case. Instead, Defendant seems to merely conjecture that it is "remarkable" that there were not more blacks in the jury venire or on the petit jury. Accordingly, the Court finds that Defendant has not established a prima facie violation of its constitutional right to a jury drawn from a fair cross section of the community. Therefore, the Court will deny Defendant's motion for a new trial.

## IV.    DEFENDANT'S MOTION FOR REMITTITUR

The jury's verdict consists of damages of $68,490 for mental distress, anxiety, outrage

and humiliation; $45,507 for past lost wages and benefits;[2] and $140,000 for future lost wages and benefits. In its motion for remittitur, Defendant asks the Court to reduce the amount of damages for mental distress and emotional anxiety ($68,490) and for future economic damages ($140,000).

The Sixth Circuit has held:

> [T]he fact that upon review of the evidence we might arrive at an award different from that of the jury does not alone empower us to change the result reached by the jury. Unless the award is (1) beyond the range supportable by proof or (2) so excessive as to shock the conscience, or (3) the result of a mistake, we must let the award stand."

Leila Hosp. and Health Ctr. v. Xonics Med. Sys., Inc., 948 F.2d 271, 278 (6th Cir. 1991) (citation omitted). The Sixth Circuit has stated that a jury verdict is not to be overturned "as excessive if the verdict is within the range of proof and the jury was properly instructed."[3] Black v. Ryder/P.I.E. Nationwide, Inc., 970 F.2d 1461, 1470 (6th Cir. 1992). Further, a jury's verdict should not be overturned unless "it is so disproportionately large as to shock the conscience." Id. Lastly, a jury's "damage award should not be overturned unless a court is left with the definite and firm conviction that a mistake resulting in plain injustice has been committed, or unless the award is contrary to all reason." Id.

In regard to the jury's award for mental distress and emotional anxiety, Defendant argues that remittitur is appropriate for several reasons. First, Defendant states that Dr. Asha Jain

---

[2]While Defendant states that it "does not agree with the award of past economic damages[,]" Defendant admits that "there was, arguably, a factual basis presented in the evidence for that award." (Def.'s Br. Supp. Mot., 14 n.6.) Therefore, the Court will not consider remittitur as to the jury's award for past lost wages and benefits.

[3]It should be noted that Defendant's motion did not include any complaints that the jury was improperly instructed.

testified that Plaintiff never told her that Defendant did not promote him because of race.  (Def.'s Br. Supp. Mot., 12.)  Further, Defendant asserts that Dr. Kong Wai Wong was not qualified to provide a psychological diagnosis of Plaintiff; that Dr. Wong admitted that Plaintiff suffered from an anxiety disorder predating the hiring of former Police Chief Winkler; and that Dr. Wong admitted that his notes did not indicate that Plaintiff had stated that the denials of promotion were due to race.  (Id. at 12-13.)

On the other hand, Plaintiff opposes remittitur and cites to various witnesses' testimony as support for the jury's award.  For instance, Dr. Jain, who is certified in psychiatry, testified that Plaintiff was distressed about not being promoted.  Dr. Wong, who has been Plaintiff's family physician for more than 10 years, testified that Plaintiff was anxious and distressed about the Inkster Police Department.  Lieutenant Smith testified that Plaintiff, after being denied promotions, changed from an easy-going person into a bitter, angry individual who smokes more frequently.  And Plaintiff himself testified about the mental effects of being denied promotions.

The Court will deny the motion for remittitur of the jury's award of $68,490 for mental distress, anxiety, outrage and humiliation.  Such mental-and-emotional distress damages must be based on "sufficient evidence to support the award."  Erebia v. Chrysler Plastic Prods. Corp., 772 F.2d 1250, 1259 (6th Cir. 1985).  See also Pembaur v. City of Cincinnati, 882 F.2d 1101, 1104 (6th Cir. 1989) (stating "[d]amages for pain and suffering, mental anguish, and the like are available to the extent that actual injury has been proved").  The Sixth Circuit has explained that "emotional distress may be proven 'by showing the nature and circumstances of the wrong and its effect on the plaintiff.'" Erebia, 772 F.2d at 1259 (quoting Carey v. Piphus, 435 U.S. 247, 263-64 (1978)).  For instance, a mental or emotional "[d]istress injury may be evidenced by one's conduct and observed by others."  Id.

Here, the Court finds that the jury's award of damages is supported by sufficient evidence. Plaintiff testified about the mental and emotional impact caused by Defendant's repeated denials of promotion. Moreover, Plaintiff's testimony was strengthened by the testimony of other witnesses. The jury also heard from two physicians—Dr. Jain and Dr. Wong—concerning Plaintiff's mental distress and emotional anxiety related to the Inkster Police Department. Furthermore, the jury heard from Lieutenant Smith, who testified that he had observed Plaintiff become more distressed and anxious because of the repeated denials of promotion. Accordingly, the Court will not interfere with the jury's assessment of the testimony and other evidence presented in this case. The Court finds that the jury's award is not beyond the range supportable by proof, is not so tremendously large as to shock the conscience, and is not contrary to all reason. Thus, the Court will not grant remittitur as to the jury's award of $68,490 for mental distress, anxiety, outrage and humiliation.

In regard to the jury's award for lost future wages and benefits, Defendant argues that remittitur is appropriate because the amount of damages is "purely speculative." (Id. at 14.) On the other hand, Plaintiff argues that the jury's award of future economic damages is appropriate because there is a strong possibility that Plaintiff would never be promoted, as he has already been denied several promotions. (Pl.'s Br. Supp. Resp., 12.)

The Court will deny the motion for remittitur of the jury's award of $140,000 for future lost wages and benefits. Defendant presents a four-sentence argument for remittitur: "[T]here appears to be no basis for the jury award of future economic damages. There was no evidence that the Plaintiff would never become the Deputy Chief. In fact, the jury became aware that the Deputy Chief position was open by the termination, during the trial, of Greg Hill. Accordingly, to award damages in the future is purely speculative." (Def.'s Br. Supp. Mot., 13-14.) On the

other hand, Plaintiff argues that "Defendant ignores the fact that Defendant has already passed Diaz over three times in favor of black candidates." (Pl.'s Br. Supp. Resp., 12.) Plaintiff argues that Defendant will almost certainly continue to deny promotion to Plaintiff because of Defendant's "custom of preferences for blacks in promotions and hiring" and its desire for "black command officers." (Id.)

Here, the Court finds that the jury's award is supported by sufficient evidence, does not shock the conscience, and is not the result of a mistake. For instance, given the evidence and the jury's finding of Defendant's practice and custom of racial discrimination in promotion, it seems quite reasonable for the jury to award future economic damages, as it is likely that Plaintiff may never be promoted. Furthermore, Plaintiff presented evidence of employee salaries, from which the jury could determine the differences in income among the different positions at the police department.

The jury's total award for future lost compensation is $140,000. The jury found that Plaintiff deserved $14,000 for 10 years, from the year 2007 to the year 2016. (Verdict Form, 4.) Interestingly, in the parties' Joint Final Pretrial Order, Plaintiff states that if he had been promoted to Police Chief and continued to serve in that position into the future, Plaintiff would earn $13,000 more per year. (Joint Final Pretrial Order, 18.) The jury's award of $14,000 is nearly the same as Plaintiff's estimate. However, the Court will not second-guess how the jury arrived at $14,000. Perhaps, the jury considered additional sources of income, such as certain monetary benefits, that go along with the position of Police Chief. Perhaps, the jury found that ten years from now, Plaintiff would be promoted to Police Chief, or maybe that Plaintiff would leave the Inkster Police Department for another job. Whatever may have been the jury's actual rationale, the jury's amount of damages for future economic damages is certainly within the

range of proof presented at trial. Therefore, the Court will not grant remittitur as to the jury's award of $140,000 for future lost wages and benefits.

## V.    <u>CONCLUSION</u>

For the reasons stated above, the Court will uphold the jury's verdict.

Accordingly,

IT IS ORDERED that Defendant's "Motion for JNOV/New Trial/Remittitur" is denied.


_____s/Bernard A. Friedman_____
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated: May 10, 2007
        Detroit, Michigan


**I hereby certify that a copy of the foregoing document was served this date upon counsel of record electronically and/or via first-class mail.**

**_____/s/ Patricia Foster Hommel_____**
**Patricia Foster Hommel**
**Secretary to Chief Judge Friedman**